SECOND DIVISION
August 14, 2007

No. 1-06-2885

THOMAS A. ROSE,                          )     Appeal from the
                                         )     Circuit Court of
     Plaintiff-Appellant,                )     Cook County.
                                         )
          v.                             )
                                         )
HOLLINGER INTERNATIONAL, INC., CHICAGO   )
SUN-TIMES, INC., JERUSALEM POST, and     )
BRET STEPHENS,                           )     Honorable
                                         )     Lee Preston,
     Defendants-Appellees.               )     Judge Presiding.


     PRESIDING JUSTICE WOLFSON delivered the opinion of the

court:

     In this defamation case we are required to explore the

indistinct line between fact and opinion.  Where we land

determines the outcome of this appeal.

     Plaintiff Thomas A. Rose (Rose) appeals the trial court's

order dismissing with prejudice his action against the defendants

Hollinger International, Inc. (Hollinger), Chicago Sun-Times,

Inc. (Sun-Times), Jerusalem Post, and Bret Stephens (Stephens).

Count V of plaintiff's Second Amended Complaint alleged Stephens

made defamatory statements against Rose in an email sent to

Jerusalem Post employees.

     The trial court found the alleged defamatory statements--

Rose "wrought damage to" the Jerusalem Post's finances,

reputation, business relationships, morale, and quality of its

editorial product--were not actionable because they were protected expressions of Stephens' opinions.  Rose appeals the court's dismissal of Count V.  We affirm.

FACTS

At the time of the complaint, Hollinger was the owner of the Sun-Times and the Jerusalem Post.  Rose began working for Hollinger and the Chicago Sun-Times in 1997.  In June 1998, Rose became the publisher and chief executive officer (CEO) of the Jerusalem Post.  He moved to Israel and worked in that position until he was fired on May 25, 2004.  On May 27, 2004, Stephens, the editor-in-chief of the Jerusalem Post, sent an email to the editorial staff in Israel and New York.  The content of the email, in its entirety, is as follows:

"Subject: memo from Bret Stephens to editorial staff

Dear Colleagues,

As some of you may have heard already, Tom Rose was this Tuesday terminated as Publisher and CEO of The Jerusalem Post.  CFO Mark Ziman has taken his place as publisher on an interim basis.

For those of us who have seen up close the damage Tom did to this newspaper, this is a happy event indeed.  For those Tom damaged

2

personally, with his abusive behavior and bizarre management style, it is happier still.  So good riddance, Tom, good riddance.  You will not be missed.

So many of us have been waiting for this day, and fighting for it, that we may be forgiven for thinking that Tom's departure brings our problems to an end.  It does not.  It will be some time before we can undo the damage he has wrought:  To our finances, to our reputation, to our business relationships, to our morale, to the quality of our editorial product.

What we can say is that, with Tom gone, we can begin to address our problems in a rational and purposeful way.  Improvements will not necessarily come quickly.  But I'm confident they will, in time, come.

I hope each of you had a pleasant holiday.  I look forward to seeing you next week.

Yours, Bret."

Rose alleges Stephens took no steps to ensure the email was not forwarded beyond its original recipients.  He says the email

was sent to several freelance journalists around the world and forwarded to other people in Illinois and New York. Excerpts from the email were published in at least two newspaper articles available on the Internet. He alleges Stephens made the defamatory statements in the course of his employment, "with the intent to injure Rose personally and to interfere with Rose's efforts to obtain employment following his termination."

Count V of Rose's Second Amended Complaint alleges the statements in the email were defamatory per se because they imputed an inability to perform, or a lack of integrity in the discharge of, Rose's employment duties, and imputed he lacked ability in his trade, profession, or business.

The defendants filed a motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)), contending: (1) the statements constitute expressions of opinion; (2) the statements are subject to a qualified privilege; (3) Rose failed to sufficiently allege "actual malice;" (4) defendants are not liable for statements made by Stephens outside the scope of his employment; and (5) Rose cannot state a claim against Hollinger or the Sun-Times as those companies were not Rose's employers at the time the statements were made.

The trial court dismissed the defamation count with prejudice, holding the alleged defamatory statements were

4

1-06-2885

expressions of Stephens' opinions.  The court did not address defendants' other arguments.  The court subsequently entered an order finding no just reason to delay appeal of the dismissal order.  155 Ill. 2d R. 304(a).

DECISION

A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. 735 ILCS 5/2-615 (West 2004); Marshall v. Burger King Corp., 222 Ill. 2d 422, 429, 856 N.E.2d 1048 (2006).  Our review is de novo. Wakulich v. Mraz, 203 Ill. 2d 223, 228, 785 N.E.2d 843 (2003).

A statement is considered defamatory "if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him."  Kolegas v. Heftel Broadcasting Corp., 154 Ill. 2d 1, 10, 607 N.E.2d 201 (1992), citing Restatement (Second) of Torts § 559 (1977).  "Statements are considered defamatory per se when the defamatory character of the statement is apparent on its face; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed."  Kolegas, 154 Ill. 2d at 10.

Rose alleges Stephens' statements add up to imputation he is unable to perform his professional duties, thus per se defamation.  The posture of this appeal does not call on us to decide whether Stephens' email contains defamatory words.  We

5

1-06-2885

will assume, as the parties apparently do in this appeal, there is at least some defamation.  The question we must answer is whether the defamatory words are actionable.  See Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 99-100, 672 N.E.2d 1207 (1996).  That is, statements that are defamatory per se may enjoy constitutional protection as expressions of opinion. Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill. 2d 558, 581, 852 N.E.2d 825 (2006); U.S. Const., amend. I.

First, we look at some of the decisions that have brought us to the fact versus opinion contest we must resolve.

Before 1990, courts perceived a fundamental distinction between statements of fact and statements of opinion for first amendment purposes.  Bryson, 174 Ill. 2d at 99.  The distinction was grounded in dictum contained in Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40, 41 L. Ed. 2d 789, 805, 94 S. Ct. 2997, 3006-07 (1974):

> "Under the First Amendment there is no such thing as a false idea.  However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.  But there is no constitutional value in false statements of fact."

In Milkovich v. Lorain Journal Co., 497 U.S. 1, 18, 111 L.

6

1-06-2885

Ed. 2d 1, 17, 110 S. Ct. 2695, 2705 (1990), the United States Supreme Court held the above passage from Gertz was not intended to create a "wholesale defamation exemption" for anything labeled an "opinion." Rejecting what it called "the creation of an artificial dichotomy between 'opinion' and fact," the Court held there is no separate first amendment privilege for statements of opinion. Milkovich, 497 U.S. at 18-19, 111 L. Ed. 2d at 18, 110 S. Ct. at 2706. A false assertion of fact can be libelous even though couched in terms of an opinion. For example, simply couching the statement "Jones committed perjury" in terms of opinion--"In my opinion Jones committed perjury"--does not dispel the factual implications contained in the statement. Milkovich, 497 U.S. at 18-19, 111 L. Ed. 2d at 17-18, 110 S. Ct. at 2706.

The statement at issue in Milkovich appeared in a newspaper column that said the petitioner "lied at the hearing after *** having given his solemn oath to tell the truth." Milkovich, 497 U.S. at 5, 111 L. Ed. 2d at 9, 110 S. Ct. at 2698. The Court said the dispositive question was "whether a reasonable factfinder could conclude that the statements in the [column] imply an assertion that petitioner Milkovich perjured himself in a judicial proceeding." Milkovich, 497 U.S. at 21, 111 L. Ed. 2d at 19, 110 S. Ct. at 2707. The Court answered the question in the affirmative, holding:

"This is not the sort of loose, figurative,

7

1-06-2885

> or hyperbolic language which would negate the
> impression that the writer was seriously
> maintaining that petitioner committed the
> crime of perjury. Nor does the general tenor
> of the article negate this impression. We
> also think the connotation that petitioner
> committed perjury is sufficiently factual to
> be susceptible of being proved true or
> false." Milkovich, 497 U.S. at 21, 111 L.
> Ed. 2d at 19, 110 S. Ct. at 2707.

The Illinois Supreme Court has adopted and applied the Milkovich test. Bryson, 174 Ill. 2d at 100; Kolegas, 154 Ill. 2d at 100. Calling it a "restrictive" test, the court held a statement is protected by the first amendment only if it cannot be "reasonably interpreted as stating actual facts" about the plaintiff. Bryson, 174 Ill. 2d at 100; Kolegas, 154 Ill. 2d at 14-15, citing Milkovich, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706. The determination is a matter of law for the court to decide. Hopewell v. Vitullo, 299 Ill. App. 3d 513, 518, 701 N.E.2d 99 (1998).

Courts consider several factors in determining whether a statement is actionable: (1) whether the statement has a precise and readily understood meaning; (2) whether the statement is objectively verifiable as true or false; and (3) whether the

8

statement's literary or social context signals that it has factual content.  <u>Solaia</u>, 221 Ill. 2d at 581-82; <u>Bryson</u>, 174 Ill. 2d at 100-01; <u>Mittelman v. Witous</u>, 135 Ill. 2d 220, 243, 552 N.E.2d 973 (1989) (adopting factors announced in <u>Ollman v. Evans</u>, 750 F.2d 970, 984-85 (D.C. Cir. 1984)).  Statements made in the form of insinuation, allusion, irony, question, ridicule, or sarcasm may be considered defamatory as positive assertions of fact.  <u>Solaia</u>, 221 Ill. 2d at 581; <u>Kolegas</u>, 154 Ill. 2d at 16.

Courts evaluate the totality of the circumstances in each case, but the emphasis is on whether the statement is capable of objective verification.  <u>Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.</u>, 367 Ill. App. 3d 48, 53, 853 N.E.2d 770 (2006), appeal allowed, 222 Ill. 2d 572, 861 N.E.2d 655 (November 29, 2006); <u>Hopewell</u>, 299 Ill. App. 3d at 519.

To aid our analysis of whether the statements at issue are constitutionally protected opinion or actionable factual assertions, we examine the ways various courts have analyzed similar statements.

<u>Cases Finding Non-Actionable Opinion</u>

In <u>Schivarelli v. CBS, Inc.</u>, 333 Ill. App. 3d 755, 776 N.E.2d 693 (2002), a segment in a 30-second promotional commercial for a television station depicted investigative reporter Pamela Zekman saying to the plaintiff, " 'Let's sum this up for a second, the evidence seems to indicate that you're

cheating the city.' " Schivarelli, 333 Ill. App. 3d at 758. The ad did not provide any further detail, although the context of the ad "trumpeted the reporter's ability to dig up hidden corruption, abuse, and unethical or illegal conduct." Schivarelli, 333 Ill. App. 3d at 760.

The court held the statement was not objectively verifiable because it was not made in any specific factual context. The reporter did not explain the evidence, state why she thought the plaintiff was cheating, or even explain what she meant by "cheating." Schivarelli, 333 Ill. App. 3d at 762. It was not actionable.

In Wynne v. Loyola University of Chicago, 318 Ill. App. 3d 443, 741 N.E.2d 669 (2000), the court held the statements about a professor in a memorandum authored by a university employee did not constitute actionable defamation. The memorandum stated the plaintiff "made bizarre telephone calls" to other colleagues about her fertility injections; she "appeared to wheedle, persuade, nag, and domineer" for changes in the university's special education program; nothing ever seemed to satisfy her; meetings with her were "uniformly unpleasant"; and she began "striking various deals" with the dean. Wynne, 318 Ill. App. 3d at 452.

The court held none of the words and phrases was capable of objective verification; it was clear the employee was merely

expressing her opinions in the memorandum. <u>Wynne</u>, 318 Ill. App. 3d at 452. The court found, "[w]hile in one sense all opinions imply facts, the question of whether a statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is nonactionable as a matter of law." <u>Wynne</u>, 318 Ill. App. 3d at 452, citing <u>Hopewell</u>, 299 Ill. App 3d at 521.

In <u>Dubinsky v. United Airlines Master Executive Council</u>, 303 Ill. App. 3d 317, 708 N.E.2d 441 (1999), the plaintiffs alleged the defendants falsely accused them of criminal conduct related to the employee purchase of United Airlines. Specifically, plaintiff Dubinsky alleged defendant Richards defamed him by calling him a "crook" in front of 30 to 40 pilots and their wives. <u>Dubinsky</u>, 303 Ill. App. 3d at 329. The court held the statement was not actionable because it was not made in any specific factual context. The court said, "[o]ne cannot rely on an assumption that those who heard the statement were completely apprised of all the developments in the ESOP controversy so as to create a definitive factual context for the use of the word 'crook.' " <u>Dubinsky</u>, 303 Ill. App. 3d at 329-30.

In <u>Doherty v. Kahn</u>, 289 Ill. App. 3d 544, 556-57, 682 N.E.2d 163 (1997), the court held statements made by plaintiff's former employer to clients were non-actionable opinion. Defendants told potential customers plaintiff was "incompetent," "lazy,"

11

"dishonest," "cannot manage a business," and/or "lacks the ability to perform landscaping services." Doherty, 289 Ill. App. 3d at 554. The court held the statements were not actionable defamation because there were no specific facts at the root of the statements capable of being objectively verified as true or false. Doherty, 289 Ill. App. 3d at 557.

In Hopewell, 299 Ill. App. 3d at 515-16, a former paid officer on a United States senator's election committee brought a defamation action against another committee member who told a newspaper the plaintiff was "fired because of incompetence." The court found the statement did not have a "precise and readily understood meaning" because of its broad scope and lack of detail. Hopewell, 299 Ill. App. 3d at 519. "[O]ne person's idea of when one reaches the threshold of incompetence will vary from the next person's." Hopewell, 299 Ill. App. 3d at 519. The tenor and context of the article in which the statement appeared further justified finding the statement was an opinion. The article was riddled with allegations concerning the senator's campaign finances, which easily could lead readers to conclude the statements were efforts at posturing before an ensuing legal battle between the plaintiff and the senator. Hopewell, 299 Ill. App. 3d at 520. Finally, the veracity of the statement could not be verified because the statement was so ambiguous and indefinite that any number of possible facts might support the conclusion

1-06-2885

that Hopewell was "incompetent."  Hopewell, 299 Ill. App. 3d at 520.

For other examples of nonactionable opinions, see also Maag v. Illinois Coalition for Jobs, Growth & Prosperity, 368 Ill. App. 3d 844, 851-52, 858 N.E.2d 967 (2006) (flyer aimed at judicial candidate stating: "What was he thinking?," "Letting a Murderer Back on the Streets," "A Mistake with Consequences," "Questionable Judgment," " 'Technicality' Justice?," and "Overturning the Conviction of a Sexual Predator"); Brennan v. Kadner, 351 Ill. App. 3d 963, 968, 814 N.E.2d 951 (2004) (statement in newspaper column that "the election board could refer [plaintiff's] case to the U.S. attorney's office, claiming that he used the U.S. mail in perpetrating a fraud"); Quinn v. Jewel Food Stores, Inc., 276 Ill. App. 3d 861, 866-67, 658 N.E.2d 1225 (1995) (statements made in an evaluation in employee's personnel file: "very aggressive, to the point of being cocky," "A con artist!! Watch out for the bullshit!"); Piersall v. Sportsvision of Chicago, 230 Ill. App. 3d 503, 510, 595 N.E.2d 103 (1992) (plaintiff was a "liar"); Horowitz v. Baker, 168 Ill. App. 3d 603, 607, 523 N.E.2d 179 (1988) (plaintiff "secretly" and "cheaply" sold city property); Kakuris v. Klein, 88 Ill. App. 3d 597, 600, 410 N.E.2d 984 (1980) (employer's statements that employee exhibited a "[l]ack of achievement in basic goals" and "did not have the qualifications needed to achieve the objectives

13

1-06-2885

of the profession.")

Cases Finding Actionable Factual Statements

In Imperial Apparel, 367 Ill. App. 3d at 54, the court held certain statements in the defendant's advertisement--referring to the plaintiffs as "shameless owners of Empire Rags" and their business establishment as a "flea market style warehouse"--did not qualify as statements of objectively verifiable fact, but part of the ad was held actionable. It stated:

> "It is laughable how with all the integrity of the 'Iraq Information Minister,' they brazenly attempt pulling polyester over your eyes by conjuring up a low rent 3 for 1 imitation that has the transparency of a hookers come on. . . but no matter how they inflate prices and compromise quality, much to their dismay, Cy and his son Paul the plagiarist still remain light years away from delivering anything close to our '3 for 1' values." Imperial Apparel, 367 Ill. App. 3d at 50.

The court held the statements addressed the conduct and character of the individual plaintiffs and appeared to be based on unstated facts concerning the quality of Imperial's goods.

14

Whether Imperial was selling imitation goods of inferior quality was capable of objective verification. Imperial Apparel, 367 Ill. App. 3d at 54. Even though the statements were made in the context of a competitor's advertisement, a reasonable reader could interpret the ad as stating actual facts about the plaintiffs and the originality and quality of Imperial's goods. Imperial Apparel, 367 Ill. App. 3d at 54.

In Solaia, 221 Ill. 2d at 583, the court examined several statements in a magazine article discussing the plaintiffs' patent infringement claims against various well-known companies and reached a split decision. The court held the article's characterization of the plaintiffs as "deeply greedy people" victimizing "the innocent companies who are being forced to defend themselves in this debacle" fell within the bounds of constitutionally protected opinion. Solaia, 221 Ill. 2d at 583. The phrase had "no precise meaning" and was "not verifiable." Solaia, 221 Ill. 2d at 583. But a reprinted comment in the article from an industry veteran describing the plaintiffs' patent as " 'essentially worthless,' *** being used to generate settlement proceeds *** filing claims 'to make a lot of money,' regardless of the means" was actionable fact. Solaia, 221 Ill. 2d at 583-84. Though the phrase "essentially worthless" had no precise meaning in the abstract, it had a very precise meaning in

15

the context of the letter. Solaia, 221 Ill. 2d at 584. Although the letter "undoubtedly employs hyperbole," the court held the statement was not an opinion. "Under its metaphorical chaff hides a kernel of fact: Solaia Technology secured a worthless patent and filed infringement claims with the sole aim of extracting settlements." Solaia, 221 Ill. 2d at 584.

In Bryson, 174 Ill. 2d at 100-102, the court held a short story's description of the plaintiff as a "slut" was an assertion of fact. The clear impact of the statement was that the plaintiff was sexually promiscuous. The court held the assertion was "sufficiently factual to be susceptible of being proven true or false." Bryson, 174 Ill. 2d at 100-01.

In Mittelman, 135 Ill. 2d at 245, the court examined a statement by a supervising attorney in a meeting with the law firm's board of directors. The attorney told the directors the waste of time and money in preparing a case was "not his fault." He said the plaintiff "sat on the statute of limitations defense with knowledge of [adverse authority] for three years without attempting to settle or cut the firm's probable losses." Mittelman, 135 Ill. 2d at 245. The court held the word "fault" was used to express a non-actionable opinion, but the remainder of the statement was factual because it had a precise core of meaning and referred to the plaintiff's actions or omissions with

16

respect to events that had taken place. Mittelman, 135 Ill. 2d at 245-46. The words were actionable.

In Moriarty v. Greene, 315 Ill. App. 3d 225, 232-33, 732 N.E.2d 730 (2000), the statement by a newspaper columnist that a child psychologist "has readily admitted that she sees her job as doing whatever the natural parents instruct her to do," was found to be actionable because it was a factual assertion capable of being proved true or false. Moriarty, 315 Ill. App. 3d at 233.

The court in Kumaran v. Brotman, 247 Ill. App. 3d 216, 228, 617 N.E.2d 191 (1993), held a statement in a newspaper article was a verifiable assertion of fact. The court found the gist of the article--that plaintiff was "working a scam" by filing frequent, unwarranted lawsuits to procure pecuniary settlements, concerned plaintiff's conduct and character, suggesting it was factual. Kumaran, 247 Ill. App. 3d at 228, citing Mittelman, 135 Ill. 2d at 241. The word "scam" had a precise core of meaning for which a consensus of understanding exists, namely, swindle. And the statement was verifiable by reviewing the evidence in plaintiff's filed lawsuits to determine whether they were bona fide or bogus. Kumaran, 247 Ill. App. 3d at 228.

For other examples of actionable statements, see also Kolegas, 154 Ill. 2d at 15 ("not for real," "scamming," and "no such show as the classic cartoon festival"); Barakat v. Matz, 271

17

Ill. App. 3d 662, 672, 648 N.E.2d 1033 (1995) (statements that defendant "had patients from [plaintiff] before," that defendant "found nothing wrong with his patients," that plaintiff's "practice was a joke," that plaintiff was not "any good as a doctor," and that plaintiff's "opinion wasn't any good"); <u>Quality Granite Construction Co. v. Hurst-Rosche Engineers, Inc.</u>, 261 Ill. App. 3d 21, 26-27, 632 N.E.2d 1139 (1994) (defendants' statements that plaintiff's "failure to complete the project in a timely manner, substandard workmanship, reluctance to complete punch list items and inability to correctly interpret the contract documents").

<u>Application to the Instant Case</u>

Plaintiff's strongest argument for the presence of actionable defamatory statements of fact is found in the third paragraph of the email:

> "It will be some time before we can undo the damage he has wrought: To our finances, to our reputation, to our business relationships, to our morale, to the quality of our editorial product."

We are particularly interested in the reference to damage "to our finances." It strikes us that the balance of the paragraph and the other assertions in the email--"abusive

18

behavior," "bizarre management style," for example--clearly are nonactionable opinions and require no further analysis.

We consider whether a reasonable reader would understand the "damage to our finances" phrase as Stephens' opinion or his factual assertion, bearing in mind "[t]he test is restrictive: a defamatory statement is constitutionally protected only if it cannot be reasonably interpreted as stating actual fact." Solaia Technology, 221 Ill. 2d at 581. We look to the three "considerations" used by the supreme court in Solaia to separate fact from opinion. Solaia Technology, 221 Ill. 2d at 581.

First, whether the statement has a precise and readily understood meaning. The meaning of "damage" is fairly clear, when taken in isolation. Our dictionary defines it as "loss due to injury; injury or harm to *** property." Webster's Third New International Dictionary 571 (1981). Webster's defines "finances" as: "the pecuniary affairs or resources of a *** company." Webster's Third New International Dictionary 851 (1981). While the words at issue, when parsed separately, might be understandable, they do not exist in a vacuum. They refer to a business enterprise, the Jerusalem Post. The company's "pecuniary affairs or resources" is a broad term, an outer shape without an inner core. The reasonable reader cannot know which pecuniary affairs or resources are being referred to. Different

19

readers will have different views of the meaning of the phrase. The conclusion we reach is substantially similar to that expressed by our court in Hopewell:

> "Regardless of the fact that 'incompetent' is an easily understood term, its broad scope renders it lacking the necessary detail for it to have a precise and readily understood meaning. There are numerous reasons why one might conclude that another is incompetent; one person's idea of when one reaches the threshold of incompetence will vary from the next person's." Hopewell, 299 Ill. App. 3d at 519-20.

We do not believe the phrase at issue has a "precise core of meaning for which a consensus of understanding exists." Mittelman, 135 Ill. 2d at 243, citing Ollman, 750 F.2d at 979-84.

Second, whether the statement is verifiable. That is, whether the alleged defamatory statement contains an objectively verifiable assertion. Schivarelli, 333 Ill. App. 3d at 760. Is it objectively capable of proof or disproof? See Quinn, 276 Ill. App. 3d at 867.

Given the broad and shapeless form of Stephens' accusation, we do not see how a reasonable person would go about proving or

20

disproving the assertion. Where would such a person begin?

No specific location of injury is provided. Nor is one inferred in some undisclosed defamatory manner. One cannot tell whether it is a matter of profit and loss. Or assets and liabilities. Or net worth. And so on. As in Hopewell, an attempt to prove or disprove the statement would entail an "endless analysis of each and every fact connected with" the plaintiff's duties. Hopewell, 299 Ill. App. 3d at 520.

That an analysis of company records would be difficult is not dispositive. It is the fruitlessness of the investigation, given the sparse information provided, that leads to our conclusion that the statement is too broad, conclusory, and vague to be objectively verifiable.

Third, we look to the statement's literary or social context to see whether it signals that it has factual content. Here, Stephens' email represents a mean-spirited sendoff of a discharged publisher for no apparent institutional purpose. It was gloating ("So good riddance, Tom, good riddance. You will not be missed."). Stephens was not making a case or stating an argument. He did not claim "to be in possession of objectively verifiable facts." Brennan v. Kadner, 351 Ill. App. 3d 963, 969, 814 N.E.2d 951 (2004) (statement in column that a source told defendant the Election Board could refer plaintiff's case to the

21

1-06-2885

United State's Attorney's office for a mail fraud prosecution was a subjective judgment, not a verifiable statement of fact). Here, given the occasion for sending of the email and the audience it was intended to reach, we do not see how a reasonable reader would take "wrought damage to our finances" as a factual assertion that Rose caused some injury to specific, identifiable pecuniary affairs or resources of the newspaper.

We recognize this is a close case. As Professor Graham has written: "A clear line between fact and opinion is impossible to draw." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 701.1, at 516 (8th ed. 2004). But draw it we must. We conclude Stephens' intemperate words in the email are constitutionally protected opinions.

CONCLUSION

For the reasons we have stated, the trial court's order dismissing Count V of the plaintiff's complaint with prejudice is affirmed. Because we reach this conclusion, we see no need to discuss other issues raised by the defendants.

Affirmed.

HOFFMAN and SOUTH, JJ., concur.

22